By the Court. Bosworth, J.
The judge charged that “ the *75 jury might infer, if they thought the circumstances warranted it, an assent on the part of Moore to the leaving of the coal on board of the vessel. If this were assented to by Mr. Moore, the mere fact that the deputy sheriff left the coal on board of the vessel, would not render the defendant liable in this action.”
The plaintiff insisted that no such question should be submitted to the jury, because no such defence was set up in the pleadings, and because there was no evidence authorizing the submission of any such question.
There was no evidence authorizing the submission of any such question, unless the fact that the plaintiff knew the coal was not removed, and did not remonstrate with the sheriff against such conduct, is evidence from which such an assent may be inferred.
An omission to interfere with a sheriff in his discharge of the duties imposed by law, or to object to, or complain of the manner in which he performs them, is no assent to his neglect or violation of duty.
The statute made it the duty of the sheriff to take the property (Code, § 209) and “ keep it in a secure place” (id. 215), and deliver it to the party entitled to it.
The schooner may not have been a secure place in which to keep the coal. The schooner was heavy laden, leaked badly, and would probably have sunk, if not pumped daily.
The sheriff did not take any measures to have her pumped, and although this was done, it was not done by men employed by the sheriff, or acting under his authority, or who had assured him such services would be performed.
This instruction, as I view it, was equivalent to charging the jury that although the schooner might be an insecure place in which to keep the coal, yet no liability would attach to the sheriff merely in consequence of his having left it in that place, if they found that Moore assented to its being left there.
The further proposition submitted in connexion with this was, whether the sheriff was wanting in reasonable and proper care in guarding the property against the consequences of the storm, which subsequently arose, and during the continuance of which tiie vessel was sunk. The jury were instructed that *76 it was the duty of the sheriff to watch the property, and see if anything should arise, while it was in his custody, to endanger its safety, and to use due and reasonable care and diligence to prevent it; if that duty was not performed, he was responsible for the neglect, and the plaintiff was entitled to recover.
The plaintiff insisted that no such question should have been submitted, on the ground that there was no evidence tending to show that the sheriff took any care, or instructed any one..for him to take any care, to prevent the vessel being sunk or injured by the storm.
As I read the evidence of Hallenbeck, the sheriff’s agent, he swears expressly, “I had no charge to take care of the safety of the vessel; I was charged by the sheriff to take charge of the coal, and see that the vessel was not removed; I was not charged to see to her safety from sinking.”
He was at the vessel between five and six o’clock in the afternoon preceding the night on which she sunk, and although there were strong indications of a storm, and his attention was called to the dangerous position and condition of the vessel, he did nothing with a view to her safety. At night he left a police officer of that,ward in charge of her, to see that the vessel was not removed.
There was no evidence on which to submit the question, whether the sheriff was wanting in reasonable and proper care in guarding the vessel against the consequences of the storm which subsequently arose and sunk her. His own officer swore affirmatively that he neither took any such care, nor was charged by the sheriff with any such duty.
He also swears, that “ on Saturday, in the afternoon, about 4 o’clock, the captain came and asked me what would be the consequence if she sunk? who would be answerable for the property ? I said I could not say, but I suppose Mr. Moore or the sheriff; he then said he would not have anything to do with her; he spoke about moving the vessel; he never asked me if he could remove her; I should not have cared if he'had moved her from that place, so long as the coal was safe; the vessel lay fifteen or twenty feet from the end of the pier; I told him if that vessel was taken- away without my consent, or the sheriff’s consent, he would be liable for stealing.”
*77 It seems to me that on such evidence it cannot be left to a jury to say whether the sheriff took reasonable and proper care to guard the property against the consequences of the storm.
Ho care was taken, or attempted to be, with a view to that object; no one was even left to watch it, with a view to guard it against such consequences. On the contrary, although it was raining and blowing in the afternoon, and although it looked likely for a storm, and in the night the wind inóreased in violence, nothing was attempted for the safety of the vessel. The agent went home and went to bed, and charged the police officer to see that the vessel was not removed, but not to do anything to prevent her being sunk.
She was sunk, and the jury may have, exonerated the defendant, on the ground that Moore assented to the coal being left on board the vessel, and having- so assented, the sheriff took proper and reasonable care to guard the coal against the consequences of the storm.
There was no evidence to warrant the submission of either of these questions, or on which a jury could properly find either of them in favor of the defendant.
So far as the case depended on these questions, I think the jury should have been instructed, that if the vessel, in the condition in which she then was, was not a secure place in which to leave and keep the coal, considering the season of the year, and the storms commonly incident to it, the sheriff was liable for any damages resulting from its being left in that place.
If he had removed the coal to a secure place, it would not have been damaged by the storm, and it is not to be assumed that it would have been equally damaged in a secure place.
It was damaged by being on the place where it was. The sheriff neither removed it, nor attempted to protect it from the storm that injured it, notwithstanding his attention was called to the danger of its position, to his liability if the vessel was sunk, and was told by the captain that he would have nothing to do with it.
It may very w.ell be, that on another trial it may appear that the captain of the schooner assented to the coal being left *78 on board, and to the use of the schooner by the sheriff, as a place of keeping it.
If this should be so, such evidence may possibly be given as will render it proper to submit to the jury as questions of fact, whether that was a secure place in which to keep the coal; and whether the indications of a storm were such as to require of the sheriff any extra precautions for the safety of the vessel.
On the case as presented to us, we agree in the opinion, that there was no evidence authorizing ■ the submission of the question of Moore’s assent to the coal being left where it was, or of the question whether the sheriff was wanting in proper care in guarding the property against the consequence of the storm which subsequently arose and during which the vessel was sunk. A .new trial must be granted, with costs to abide the event.